[Cite as *State v. Webb*, 2021-Ohio-3323.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 20CA64 |
| | : | |
| JAMES D. WEBB JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of Common Pleas, Case No. 2018CR1070

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     September 21, 2021

APPEARANCES:

For Plaintiff-Appellee:

GARY BISHOP
RICHLAND CO. PROSECUTOR
VICTORIA MUNSON
38 South Park St., #2
Mansfield, OH 44902

For Defendant-Appellant:

R. JOSHUA BROWN
32 Lutz Ave.
Lexington, OH 44904

*Delaney, J.*

{¶1} Appellant James D. Webb Jr. appeals from the October 24, 2019 Sentencing Entry of the Richland County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   This case arose on September 26, 2018, when appellant robbed W.N. after W.N. bought pills in appellant's sister's apartment.   The following evidence is adduced from the record of appellant's jury trial.

*W.N. is robbed after buying pills*

{¶3} W.N. is an admitted oxycodone addict. As of September 2018, he was taking pills "at high levels" and often bought pills at the apartment of a woman named Bercha who lived in Apartment 4 in a complex on Kentucky Avenue. Bercha is now deceased.  Customarily, "Detroit boys" would bring large amounts of pills to Bercha's apartment and "set up" in her back bedroom.  Buyers would come to the apartment at all hours to buy pills, often more than once a day.

{¶4} On September 26, 2018, W.N. went to Bercha's apartment several times. The first time was in the early afternoon, and in the apartment W.N. found Bercha, an unknown man in the kitchen, and the "Detroit boys" in the back bedroom. W.N. later learned the man in the kitchen was appellant, Bercha's brother. As W.N. transacted the purchase of a "large amount" of pills, a neighbor, Jane Doe, came to the door of the apartment.  Doe didn't have a place to park and asked if someone could move their car. W.N. agreed to do so.  He finished his transaction, left the apartment, and drove off in his car.

{¶5} Jane Doe was a witness for appellee at trial. She arrived home to the apartment complex shortly after 3:00 pm and no parking spots were available. When she asked the occupants of Apartment 4 to move a car, W.N. and appellant exited the apartment. Doe didn't know W.N.'s name but described him as "the bigger guy." Doe knew appellant to be Bercha's brother.

{¶6} W.N. returned after dark to buy more pills. Again, he parked in the small lot and walked down the sidewalk in the direction of Apartment 4. He noticed a man standing against the door, the same man he saw in Bercha's kitchen earlier that day. The man asked, "Are you coming here?" and W.N. said yes. The man then "wielded a large knife," according to W.N.'s testimony, and said, "Give me everything you got. I know why you're here."

{¶7} The man—appellant—poked at W.N.'s stomach with the knife, and W.N. kept moving back from him. W.N. tripped and fell as he attempted to get away. He got up again to run. He dug in his pockets and realized his hand was bleeding profusely. W.N. ran to his car, but realized he didn't have his keys. He went back toward the grassy area near the apartments to look for his keys, and noticed a neighbor, Jane Doe, standing at her door. W.N. asked Doe if she could help him find his keys and told her he was bleeding and needed help. Doe appeared to be holding a phone in her hand and went back inside her apartment.

{¶8} Then appellant "came back out of the darkness," according to W.N., and said, "Didn't I tell you to get out of here?" W.N. took off running down Ashland Road, toward downtown Mansfield. He approached a Marco's Pizza and saw a man and woman in the parking lot. He asked if they could give him a ride and they agreed. The couple

insisted that W.N. needed to go to the hospital because he was bleeding profusely, but he wanted to go home to see his wife first.  The couple dropped him off at a friend's house who immediately took W.N. home and his wife brought him to the hospital.

{¶9} Police met W.N. at the hospital and he described what happened. He had severe cuts to his hand and a stab wound in his back, near his spine.

{¶10} In the meantime, Jane Doe had witnessed most of the incident between appellant and W.N. She was sitting on a couch near a window when she saw appellant walking on the sidewalk outside the apartments, along with the man she saw earlier— W.N. She didn't know W.N.'s name but recognized him from the earlier encounter at Bercha's apartment. Doe heard appellant say words to the effect of "Give me that" and the other man said "No."  Doe looked out the window and saw appellant with a large knife in his hand. Doe remained inside her apartment, terrified, and heard appellant stop outside her door before he kept walking in the direction of Bercha's apartment.  Doe later saw appellant running behind the building.

{¶11} Doe opened her apartment door and W.N. came up the sidewalk covered in blood, stating the he couldn't find his keys. Doe said nothing and slammed her apartment door shut. She called 911 and a recording of her call was played during her testimony. Doe spoke very quietly because she was afraid appellant might still be close by.  She described two people "fighting around," and explained she meant appellant tried to take something from W.N., then everything went quiet.  At trial, Doe identified appellant as the man with the knife.

{¶12} Deputies from the Richland County Sheriff's Department were dispatched to the apartment building and upon arrival found a trail of blood near the sidewalk.

Following the blood trail to Marco's Pizza, one deputy learned that the stabbing victim obtained a ride from a couple picking up a pizza. The deputy obtained their contact information and spoke to the couple about the man they gave a ride to. He observed a bloodstain and a blood-soaked blanket in the couple's car. Deputies spoke to W.N. at the hospital and to Jane Doe at the apartment building. They learned the suspect in the stabbing was appellant, Bercha's brother. They knocked on Bercha's door that night, but no one answered.

{¶13} Deputies collected evidence from the scene that night and the next day in daylight. They found a bloodstained Avia athletic shoe and packaging and a sheath for a Good Cook brand knife. They found the knife itself stuck into the ground approximately 10 feet from Bercha's apartment, with the handle sticking out of the ground. The evidence was photographed, collected, and submitted to BCI for DNA analysis. A forensic scientist testified that DNA on the knife handle matched appellant's profile, and the bloodstain on the outside of the Avia shoe matched W.N.'s profile. DNA from the collar of the shoe matched appellant. Deputies showed W.N. a photo lineup and he identified appellant as the person who stabbed him.

{¶14} Appellant was eventually arrested on September 29, 2018, and investigators obtained a taped statement from him at the Richland County Jail. Appellant told them W.N. came to his sister's apartment to buy pills from "the Detroit boys." He admitted he was wearing Avia athletic shoes on the night of the incident. He admitted stealing the knife from Kroger. Appellant also told deputies he smoked crack cocaine on the day of the stabbing and that he gets violent when he doesn't take his medicine. He denied attacking W.N.

{¶15} A loss-prevention officer from Kroger testified that appellant stole a large knife from the Mansfield store and identified the stolen knife as the knife found by deputies stuck in the ground. During her testimony, appellee presented a video of appellant stealing the knife.

*Appellant's testimony*

{¶16} Appellant was the only defense witness at trial. He readily admitted he is a convicted felon and crack cocaine addict. Appellant testified the "Detroit boys" frequently "set up" at Bercha's apartment to sell drugs, and she was scared and wanted it to stop. Appellant therefore went to the apartment in an attempt to protect his sister. He admitted he stole the knife from Kroger and concealed it in a flower bed outside the apartment "for protection."

{¶17} On the day in question, appellant had been out with friends and returned to the apartment building after dark. He observed a man hunched over in the grass, looking for something. Appellant helped the man find his hat, keys, cell phone, and wallet. Appellant testified the man said, "I'm leaking," which appellant understood to mean he was bleeding. Appellant entered Bercha's apartment intending to call an ambulance, but when he came back outside, the man was gone.

{¶18} Appellant denied stabbing W.N. He admitted he and Bercha didn't open the door when deputies knocked, but said it was because "the Detroit boys" were around. Upon cross-examination, appellant acknowledged W.N. came to the apartment earlier that day and then returned to "re-up," or get more pills. Appellant acknowledged he knew W.N. would therefore have money in his pockets. Appellant denied that the bloodstained Avia shoe was his despite the discovery of his DNA on the collar of the shoe.

*Indictment, trial, conviction, and sentence*

{¶19} Appellant was charged by indictment with one count of aggravated robbery pursuant to R.C. 2911.01(A)(1), a felony of the first degree [Count I] and one count of aggravated robbery pursuant to R.C. 2911.01(A)(3), also a felony of the first degree [Count II]. Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant was found guilty as charged and sentenced to a prison term of 11 years upon Count I. The trial court found that Count II merged with Count I.

{¶20} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶21} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶22} "THE VERDICTS FOR AGGRAVATED ROBBERY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

{¶23} In his sole assignment of error, appellant argues his convictions upon two counts of aggravated robbery are against the manifest weight of the evidence. We disagree.

{¶24} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* supra, 78 Ohio St.3d at 387.

Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶25} Appellant was found guilty upon one count each of aggravated robbery pursuant to R.C. 2911.01(A)(1) and (3). Those sections state:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

> * * * *.

> (3) Inflict, or attempt to inflict, serious physical harm on another.

{¶26} Appellant argues his aggravated-robbery convictions are against the manifest weight of the evidence because appellee's witnesses failed to identify him as the perpetrator and there is no evidence of a theft offense. Upon our review of the record, we disagree.

{¶27} Appellant asserts W.N. was unable to identify appellant as the man who stabbed him until he was "prompted" by the prosecutor. First, we note W.N. unequivocally identified appellant during his testimony as the man he first saw in the kitchen of Bercha's apartment and who approached him upon his later return to the apartment. T. 196, 208, 212. W.N. also identified appellant in a photo lineup during the investigation. T. 319-320.

Moreover, we disagree with appellant's erroneous characterization of W.N.'s testimony and the alleged "prompting" by the prosecutor which appellant cites at page 4 of his brief. The cited testimony, in context, is below:

> * * * *.

> [PROSECUTOR]: Is [appellant] the person that was outside that Apartment 4 that night that confronted you with the knife and then ultimately stabbed you? Do you see him in court today?

> [W.N.]: He appears a little different, but yes, I do.

> [PROSECUTOR]: And can you indicate where he is seated and what he is wearing?

> [W.N.]: He is wearing a blue-and-white striped shirt with a tie, gray hair, and glasses.

> [PROSECUTOR]: You say he looks a little different. Do you mean he seems to be in deteriorated health?

> [W.N.]: Uhm, he seems to be a little lighter and actually looks a little more healthy.

> [PROSECUTOR]: But he is in fact the person who demanded money and then ultimately stabbed you that night?

> [W.N.]: Yes, he is.

> [PROSECUTOR]: That's all I have.

> THE COURT: The record will reflect the witness did identify the defendant at this time.

> * * * *.

T. 208.

{¶28} Appellant also argues Jane Doe was unable to identify appellant as the person who stabbed W.N. While it is true Jane Doe did not observe the actual stabbing, she observed appellant with the knife and with W.N. on the sidewalk. She heard appellant demand something from W.N. and W.N. refused. T. 224-228, 236. She identified appellant at trial as the man she saw with the knife. T. 238.

{¶29} Appellant cites *State v. Anderson*, 191 Ohio App.3d 110, 2010-Ohio-6234, 944 N.E.2d 1224 (1st Dist.), for the proposition that a conviction was reversed as against the manifest weight of the evidence after a witness had to be recalled to identify the defendant. Upon our review of the case, the appellate court reversed and remanded for a new trial because the trial court abused its discretion in permitting the witness to be recalled to identify the defendant. *Id., ¶* 19. The appellate court explicitly did not reach the issue of manifest weight of the evidence because of its resolution of the witness-testimony issue. *Id., ¶* 21. *Anderson's* conclusion that the trial court abused its discretion is premised upon unique facts that bear no resemblance to the instant case. Nor does *Anderson* involve a manifest-weight claim resting upon identification of the defendant.

{¶30} The jury was free to accept or reject the testimony of W.N. and Jane Doe, just as the jury was free to reject appellant's self-serving testimony. Ultimately, the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. In the instant case, W.N. and Doe unequivocally identified appellant as the man with a knife who stabbed W.N.

{¶31} Appellant further argues his conviction is against the manifest weight of the evidence because there is no evidence a theft occurred. We disagree. The jury was instructed that a "theft offense" is to knowingly obtain or exert control over property owned by another, without the person's consent or by threat or by intimidation, and with the purpose to deprive another of his or her property. T. 382. The jury was also instructed that a "criminal attempt" occurs when one purposely does anything that is an act constituting a substantial step in a course of conduct planned to culminate in his commission of the offense. T. 382.

{¶32} Appellee could thus establish aggravated robbery premised upon an attempted theft offense. R.C. 2911.01(A)(1) and (3), the aggravated robbery, require appellee to prove appellant "attempt[ed] or commit[ted]" a theft offense. The jury could reasonably find appellant attempted to commit a theft offense based upon W.N.'s testimony that appellant said "Give me everything you got" while brandishing the knife, and from Doe's testimony that appellant said words to the effect of "give me that."

{¶33} We cannot find the jury clearly lost its way and created a manifest miscarriage of justice in convicting appellant of two counts of aggravated robbery. Appellant's convictions are not against the manifest weight of the evidence and the sole assignment of error is therefore overruled.

**CONCLUSION**

{¶34} Appellant's sole assignment of error is overruled and the judgment of the

Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.